BONILLA,
SYNDIC, ETC.
*vs,*
MERLE ET AL.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be affirmed, with *costs.*

BONILLA, SYNDIC, &C. *vs.* MERLE ET AL.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF
NEW-ORLEANS.

A delegation includes a novation by the extinction of the debt due from the person delegating, and the obligation contracted by the new debtor to the common creditor.

Delegation contains a double novation, where the person delegated is the debtor of the person delegating. The former, to acquit himself of his obligation to the latter, contracts a new obligation to the creditor. Novation takes place, both of the obligation of the person delegating, by giving a new debtor, and of the person delegated, by the new obligation he contracts to the common creditor.

If the person delegated be not debtor of him delegating, still, if he obligates himself to pay, he is bound, and cannot resist payment, only saving his recourse against the person delegating him.

So, where A requests B, his factor, to pay C one thousand nine hundred and eleven dollars, who replies he will, *when put in funds,* and advises A he has promised C to do so. But the latter not getting his money as soon as expected, applied several times to A, his original debtor, to remit him the money, and does no act, in the meantime, to release B from his conditional promise to pay him: *Held,* that it was a delegation of a new debtor from A to C, and B became absolutely bound on getting in funds.

The creditor, by the promise of the person delegated, has two bound, to either of whom he may resort for payment. If the original debtor makes

payment after delegating another, he will have his recourse against the latter; but until payment, his right against the delegated debtor to the common creditor, is suspended.

EASTERN DIST.
*March,* 1836.

BONILLA,
SYNDIC, ETC.
*vs.*
MERLE ET AL.

When B, the defendant, was put in funds, he became absolutely bound to C; he might have again become so to A, if it was shown the latter had paid C.

This is an action instituted by the plaintiff, as syndic of the creditors of one Carlos Vidal, in Havana, against the commercial firm of John A. Merle & Co., of New-Orleans, claiming a balance from the latter of one thousand nine hundred and eleven dollars and thirty-seven cents, resulting from commercial dealings and transactions between them.

The defendants pleaded the general issue, and denied that they were indebted to, or had any funds of Vidal in their hands whatever.

The evidence showed that Vidal had consigned to the defendants merchandise to sell, as his factors, and to employ the proceeds in the purchase and shipment of goods to his order and directions.

On the 12th June, 1834, Vidal wrote Merle & Co. as follows: "According to an account which I have this day liquidated with Carlos Magnin, I owe him one thousand nine hundred and eleven dollars and thirty-seven cents. I hope you will do me the favor to pay him the same, and put me in cash for the amount of the bills ofexchange, &c., which W. B. Smith has sent to you, according to his account of this date; discounting all said bills and accounts, and holding the proceeds in your hands, subject to my drafts at sight."

On the 25th of the same month, Merle & Co. wrote to Vidal on the subject of the purchase of flour for his account, and in reply to his, in which they say, "You wish us to put in cash to your account the proceeds of the bills and accounts which W. B. Smith has sent to us; and as we have not yet received his instructions respecting them, we cannot comply with your wishes. Besides, it would not be possible for us to make any advance on the bills, because we cannot make use

28

EASTERN DIST.
March, 1836.

BONILLA,
SYNDIC, ETC.
vs.
MERLE ET AL.

of them before maturity. Under these circumstances, we have agreed with Mr. Magnin that so *soon as you shall place us in funds,* we will account to him for the one thousand nine hundred and eleven dollars and thirty-seven cents, which you owed him."

*Vignie,* a witness for defendants, and a clerk in their house, says, "Vidal never answered this letter; that Vidal's letter was received on the 23d of June, 1834, and answered, as it appears from the foregoing extract, on the 25th of the same. On the 13th of September following, the defendants made the entries on their books, by which it resulted that they had sold enough of the produce of Vidal to warrant them in making the promise they did to Magnin, in which they considered the assignment from Vidal to Magnin valid."

"That Magnin himself brought the letter of Vidal to Merle & Co., and demanded the execution of the assignment. He was going to New-York and from thence to Liverpool, and requested Merle & Co. to remit him Vidal's funds to the latter place, which the former promised to do, so soon as they would have sold Vidal's produce to an amount sufficient. Vidal never answered Merle & Co. on the subject of the assignment to Magnin, and Merle considered it as a thing perfectly settled."

On the 25th June, as above, Magnin wrote from New-Orleans to Vidal: "No use can be made of the bills which W. B. Smith has sent to Merle & Co. By the first opportunity which will offer for New-York, I beg you to remit to Mr. W. Merle the one thousand nine hundred and eleven dollars which you have belonging to me. I would be pleased if you could procure a bill at eight days' sight. I leave the day after to-morrow for New-York."

On the 15th July, Vidal acknowledges the receipt of Merle & Co.'s letter of the 25th June. He says, "As respects the funds which W. B. Smith has placed in your hands in bills, one is already due, which I hope will have been collected without difficulty. I hope you will place the same to my credit, as he instructs you in the enclosed letter; and as to the two bills of exchange which fell due in Sep-

EASTERN DIST.
*March,* 1836.

BONILLA,
SYNDIC, ETC.
*vs.*
MERLE ET AL.

tember and November, as they are endorsed, you can easily buy flour with them, and in that case ship it to me by the first Spanish vessel."

On the 7th August following, Magnin wrote to Vidal from New-York, saying, "I am very much surprised not to have received an answer to the letter which I sent to you on the 25th June, begging you to remit me the one thousand nine hundred and eleven dollars which you have belonging to me. Mr. Merle has received no letter from you. I know not the motive of your silence. Do me the favor to remit this sum to Mr. Merle, who has orders to send me the amount to Liverpool."

On the 26th August, he wrote again to Vidal from New-York: "I have received yours of the 9th instant. No money is to be had. I therefore beg of you, &c., to remit the amount in sterling money to Liverpool." On the 12th of August he wrote from New-York to Merle & Co. as follows: "I came here on the 29th ultimo. I have delayed until now writing to you, in the hope of receiving letters from Carlos Vidal. I have only received from him an unimportant letter which you were so good as to forward to me. I pray you, gentlemen, in case *he has, or shall,* remit to you the one thousand nine hundred and eleven dollars and thirty-seven cents which he owes me, to remit the same to me at Liverpool."

On the 25th September, Merle & Co. wrote to Vidal, in which, among other things, they say: "Our mutual friend, Don Carlos Magnin, before leaving here, told us that you would remit to us the balance which you owed him of one thousand nine hundred and eleven dollars and thirty-seven cents, and directed us to forward it to him in Europe; therefore be pleased to remit us said funds, &c."

The evidence further shows, that on the 13th September, Merle & Co. made an entry in their books, debiting Vidal with one thousand nine hunded and eleven dollars and thirty-seven cents, with interest from the 25th June previous, and crediting Magnin for this sum. It does not appear they ever informed Vidal of this debt until after his failure.

The parish judge was of opinion "no actual and legal assignment or transfer of a debt from Vidal to Magnin, and

EASTERN DIST.
*March*, 1836.

BONILLA,
SYNDIC, ETC.
*vs.*
MERLE ET AL.

an acceptance of the same by John A. Merle was shown," rendered judgment in favor of the plaintiff for the amount of his claim. The defendants appealed.

*J. Slidell* for the plaintiff.

1. On the receipt of Vidal's letter of 12th June, Merle & Co. had in their hands no money belonging to him. They positively refused to accept his order, and Magnin expressly repudiated it by directing him to remit funds in another manner. The letters of both Magnin and Merle & Co. show clearly, that no assignment was made of funds to the credit of Magnin.

2. The acceptance by Merle & Co. of Vidal's order, was necessary to vest the amount in Magnin. They were under no obligation to accept drafts for a portion of any parcels held by them. See *Russel* vs. *Ferguson*, 7 *Martin, N. S.* 519. *Miller* vs. *Brigit*, 8 *Louisiana Reports*, 536.

3. The funds of Vidal would, at any time, have been subject to attachment in the hands of Merle & Co. Had nothing been received from bills, or sales of produce, it is not pretended that Merle & Co. would have been responsible to Magnin. Had Vidal become indebted to them, they could have confiscated parcels of property or of bills, with such debt. These facts are wholly inconsistent with the idea of any valid assignment in favor of Magnin.

*Eustis* for defendants.

1. It appears from the correspondence that Vidal owed Magnin one thousand nine hundred and eleven dollars and thirty-seven cents, which debt has not been paid. Vidal directed John A. Merle & Co. to pay it to Magnin. They assumed to pay the sum to Magnin, when Vidal should put them in funds; they notified Vidal of their conditional promise to Magnin, to which he, Vidal, by his silence, assented. Thus the contract stands between the parties.

2. This contract has never been discharged. Magnin has not been paid, and his attempts to get the money from Vidal do not release Merle & Co., who remain bound by their ori-

ginal assumpsit, which, in its essential features, may be
assimilated to a continual acceptance of a bill of exchange.

*Mathews, J.,* delivered the opinion of the court.

In this case the syndic of the creditors of Vidal, an insolvent, residing in the city of Havana, in the island of Cuba, sues to recover from the defendants one thousand nine hundred and eleven dollars and thirty-seven and a half cents, which he alleges they owe to the estate of the insolvent, as having been his debtors to that amount previous to his failure, &c.

They resist payment to, or a recovery by, the present plaintiff, on account of having assumed to pay this sum to one Magnin, at the request, and in pursuance of the order of Vidal, the latter having acknowledged himself to be indebted to this amount to the former. Judgment was rendered in favor of the plaintiff by the court below, from which the defendants appealed.

The principal difficulty in the decision of the case, as it is presented to the court, arises out of the question, to which of the two, Vidal or Magnin, are the defendants legally obliged to pay the money in dispute. They are clearly debtors to one or the other, according to evidence furnished by themselves in the exhibition of extracts from their book of accounts; but they cannot be debtors to both, on agreements or implied contracts relating to only one and the same debt, and if they are debtors to one of these persons alone, and he be Magnin, to whom they were requested to pay by Vidal, it must be on account of their assumpsit to the former having released them from, or suspended their obligation to the latter.

The truth of this position depends upon the evidence of the case. Most of the important facts are to be ascertained by the examination of a correspondence between the defendants and Vidal, and letters from Magnin to the latter and to the former.

On the 12th of June, 1834, Vidal wrote from Havana to the defendants, (who, from the tenor of his letter, appear to have been his factors in New-Orleans) and states to them, that on liquidating accounts with Magnin, he owed him one

EASTERN DIST.
*March*, 1836.

BONILLA,
SYNDIC, ETC.
*vs.*
MERLE ET AL.

A delegation includes a novation by the extinction of the debt due from the person delegating, and the obligation contracted by the new debtor to the common creditor.

Delegation contains a double novation, where the person delegated is the debtor of the person delegating. The former to acquit himself of his obligation to the latter, contracts a new obligation to the creditor. Novation takes place both of the obligation of the person delegating, by giving a new debtor, and of the person delegated, by the new obligation he contracts to the common creditor.

thousand nine hundred and eleven dollars and three rials, and requested them to pay that sum to Magnin. In the same letter, mention is made of certain bills of exchange and accounts which had been forwarded to them by one W. B. Smith, to be collected for the benefit of Vidal, on which he requests his agents to put him in cash by discounting them, &c. This letter contains no positive information of any particular funds of the writer in possession of his correspondents, out of which Magnin was to be paid. In truth, it contains no expressions from which an implication can be drawn, that they were his debtors at that time; consequently, the order to pay Magnin must be viewed as a simple request on the part of Vidal, without any assignment of a debt due to the latter by the defendants, or indication of any particular fund out of which payment was to be made; and this appears to have been the understanding of Merle & Co. on this subject, for in their answer to Vidal, they inform him that they had agreed to pay Magnin, when they should be put in funds by his debtor. The creditor, after this conditional promise made to him by the defendants, applied directly to Vidal for payment, as appears by several letters addressed to that gentleman; and, about the same period, he requested Merle & Co. to transmit to him at Liverpool the amount of the debt, if it should be remitted to them by Vidal.

According to these facts, the case assumes a greater similitude to what is termed, in our law, delegation, than to any other species of contract; it, perhaps, wants the entire requisites of a complete delegation, as it does not appear that the persons delegated were debtors to the party delegating them, at the time of the delegation. But if they assumed to pay on his request, they stand in the same situation in relation to the creditor, as if they had really been indebted to the person delegating them.

Before the adoption of our codes, the law in respect to novation predicated one in every case of delegation. In *Pothier's treaties on obligations*, it is laid down as a rule on this subject, " that a delegation includes a novation by an extinction of the debt from the person delegating, and the obligation

contracted in his stead by the person delegated. Usually, a delegation contains a double novation, for ordinarily, the person delegated is a debtor of the one delegating, and the former, to acquit himself of his obligation to the latter, contracts, by his order, a new obligation to the creditor of the person delegating. In this case, there is a novation both of the obligation of the person delegating, by giving to his creditor a new debtor, and of the person delegated, by the new obligation which he contracts."

"If the person delegated were not in truth the debtor of the person delegating him, still, if he enter into an engagement to pay, his obligation will not be less binding, and he cannot resist the payment of it, saving his recourse against the person delegating him." *Pothier's obligations, Nos.* 565 *and* 566.

It is, however, declared in the Louisiana Code, article 2188, that "the delegation by which a debtor gives to his creditor another debtor, who obliges himself towards such creditor, does not operate a novation, unless the creditor has expressly declared that he intends to discharge his debtor who has made the obligation."

This provision of the Code, from the very terms in which it is expressed, relates only to the novation which was operated by law previously in force, as between the original debtor and creditor, and does not touch that novation which formerly existed by effect of law, between the original debtor and the debtor delegated.

Merle & Co. did not assume to pay absolutely the debt of Vidal to Magnin; the assumpsit was on condition of getting into their hands funds of his debtor, to the amount requested to be paid. The evidence shows completely, that they had funds, and it does not appear that they have been released from their obligation to Magnin, (and the condition being performed they must be considered as absolutely bound by their promise) by any act of him or Vidal, the original debtor, by making payment himself. We say that Magnin did nothing to exonerate Merle & Co., for his subsequent application to Vidal for payment, cannot be so construed as to

Eastern Dist. *March,* 1836.

BONILLA, SYNDIC, ETC. vs. MERLE ET AL.

If the person delegated be not debtor of him delegating, still if he obligates himself to pay, he is bound, and cannot resist payment; only saving his recourse against the person delegating him.

So, where A requests B, his factor, to pay C one thousand nine hundred and eleven dollars, who replies he will *when put in funds,* and advises A he has promised C to do so, but the latter not getting his money as soon as expected, applied several times to A, his original debtor, to remit him the money, and does no act in the meantime to release B from his conditional promise to pay him: *Held,* that it was delegation of a new debtor from A to C, and B became absolutely bound on getting in funds.

EASTERN DIST.
*March*, 1836.

BONILLA,
SYNDIC, ETC.
*vs.*
MERLE ET AL.

have this effect, because, according to the article of the code just cited in relation to these parties, there was no novation; but, as we have already stated, it is impossible that the defendants can be considered as absolute debtors for the same debt, and at the same time to both Vidal and Magnin. They are, however, absolute debtors, by their promise, to the latter; therefore, they are not such to the former.

According to our laws as they now exist, although the novation which formerly took place between the debtor delegating, (creditor of the one delegated,) and this last is not expressly destroyed by the code; yet, as novation does not result from the contract, as between the original debtor and creditor, by which the former is freed from his obligation to the latter, injustice might result by tolerating novation between the person delegating and the delegated, so as to extinguish absolutely and forever, the obligation of the latter to pay the former. The creditor, by the promise of the person delegated, has two bound to him, to either of whom he may resort for payment; and if his original debtor should make such payment after the delegation, he ought then to have recourse against the person delegated, his former debtor. But until such payment and extinguishment of the original obligation, his right to pursue the person once debtor to him alone, who, by his orders, has bound himself to pay to another for him, must be suspended, or we shall fall into the absurdity of making the person delegated debtor to two for the same thing, and at the same time, and thus subject him to pay twice, which would be unjust.

As the cause now appears, the defendants are debtors, absolutely, to Magnin, and may again become so to Vidal, when it shall be shown that he has paid Magnin.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be avoided, reversed and anulled, and it is further ordered, that judgment be here entered for the defendants, as in case of non-suit, with costs in both courts.

*Marginal notes:*

The creditor, by the promise of the person delegated, has two bound, to either of whom he may resort for payment. If the original debtor makes payment, after delegating another, he will have his recourse against the latter. But until payment, his rights against the delegated debtor to the common creditor, is suspended.

When B, the defendant, was put in funds, he became absolutely bound to C. He might have again become so to A, if it was shown the latter had paid C.